915 P.2d 336 (1996)
121 N.M. 580
Anderson CARTER, II, Plaintiff-Appellant,
v.
The CITY OF LAS CRUCES, New Mexico, and Ruben Smith, in his capacity as Mayor, and Bruno Zaldo, in his official capacity as City Manager, and Herculano Ferralez, Gene Kennon, Jack Valencia, Henry Benavidez, Tommy Tomlin, and John Haltom, in their capacities as City Councilors, Defendants-Appellees.
No. 15897.
Court of Appeals of New Mexico.
March 8, 1996.
Certiorari Denied April 23, 1996.
Lawrence R. White, Joel T. Newton, Las Cruces, for Appellant.
Harry S. (Pete) Connelly, Las Cruces, William L. Lutz, Las Cruces, for Appellees.

*337 OPINION

BOSSON, Judge.
1. The City of Las Cruces called a municipal election to decide whether the City should acquire a private electric utility either by negotiated purchase or eminent domain. Plaintiff, a local citizen taxpayer, opposed the acquisition. He filed suit to enjoin the City and various municipal officials from expending public funds as part of a mass media campaign to promote a favorable vote in the election. Plaintiff alleged a violation of various state and federal statutory and constitutional provisions including the federal Civil Rights Act of 1871, 42 U.S.C. § 1983 (1988). The district court dismissed Plaintiff's complaint for lack of subject matter jurisdiction. In so doing, the court erred, and we reverse. We also hold on an issue of first impression that, even if injunctive relief has been rendered moot by the election, the potential for nominal damages under § 1983 presents a continuing justiciable controversy which is not moot. We therefore remand for further proceedings.

FACTS
2. The City passed a resolution on July 5, 1994, calling for a special election on August 30, 1994. On August 9, 1994, Plaintiff filed a petition for declaratory relief and temporary and permanent injunction together with a motion for temporary restraining order and preliminary injunction. Plaintiff alleged that City officials were biased in favor of the utility acquisition and were wrongfully using public funds in a partisan fashion to promote a favorable vote. More specifically, Plaintiff alleged that the City used public funds to hire advertising firms, conduct public opinion surveys, hire personnel, assign public employees, and make public facilities available, all for partisan purposes as distinguished from simply educational or informational purposes. Toward that end, the City allegedly used public funds to purchase such things as brochures, yard signs, billboards, and advertising on television, radio, and newspaper. The City was even alleged to have registered as a political action committee. Plaintiff charged the City with wrongfully spending or setting aside for expenditure over $80,000 in public funds.
3. In his lawsuit, Plaintiff claimed the City violated various state statutes dealing with campaign practices and municipal elections (citing NMSA 1978, §§ 1-19-1 to -36 (Repl.1995) and NMSA 1978, §§ 3-8-1 to -80 (Repl.1995)) as well as certain municipal ordinances and regulations regarding local elections and campaign practices. Plaintiff also claimed a violation of the United States Constitution, including the First and Fourteenth Amendments and art. IV, § 4 which guarantees to every state a republican form of government. Plaintiff further cited to various provisions of the New Mexico Constitution, including art. II, § 18 (equal protection and due process); art. II, § 17 (freedom of expression); and art. II, § 8 (free and open elections).
4. On August 15, 1994, the district court conducted a hearing and dismissed Plaintiff's petition for want of subject matter jurisdiction. At the hearing, the court expressed its reliance on Sangre de Cristo Development Corp. v. City of Santa Fe, 84 N.M. 343, 347, 503 P.2d 323, 327 (1972), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 400 (1973), a case which held under state law that principles of common law sovereign immunity preclude a state court from issuing an injunction against a municipality. After his claim was dismissed in state court, Plaintiff then filed suit in federal court seeking the same injunctive relief on similar grounds. However, the federal court elected to abstain in the hope that the state court would reconsider its dismissal and decide Plaintiff's case on state law grounds, thereby making it unnecessary to decide the federal constitutional claims. On August 30, 1994, the very day of the special election, Plaintiff returned to state court with a motion for reconsideration as well as a request for leave to file an amended complaint expanding relief to include compensatory damages. On September 13, 1994, the court denied all of Plaintiff's requests. Plaintiff timely appealed from both orders.

DISCUSSION

Federal Claims
5. Initially, we decide whether the district court was correct in dismissing the *338 federal constitutional claims for lack of subject matter jurisdiction. Section 1983 reads, in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
It is settled that state and federal courts share concurrent jurisdiction over § 1983 claims for the denial of federal constitutional rights. See Martinez v. California, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980). State courts share responsibility for the application and enforcement of federal law as part of our American system of federalism. Howlett By and Through Howlett v. Rose, 496 U.S. 356, 372-73, 110 S.Ct. 2430, 2440-41, 110 L.Ed.2d 332 (1990) (applying the Supremacy Clause to a § 1983 claim brought in state court).
Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forumalthough both might well be truebut because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws "the supreme Law of the Land," and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure.
Id. at 367, 110 S.Ct. at 2438. New Mexico state courts are open to § 1983 claims at least to the same degree as are federal courts. See, e.g., Daddow v. Carlsbad Mun. Sch. Dist., 120 N.M. 97, 898 P.2d 1235 (1995), cert. denied, ___ U.S. ___, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996).
6. When common law defenses like sovereign immunity are asserted against a § 1983 action, they are governed by federal law regardless of whether they might be permitted under state law. Howlett, 496 U.S. at 383, 110 S.Ct. at 2446-47; Owen v. City of Independence, 445 U.S. 622, 648-49, 100 S.Ct. 1398, 1413-15, 63 L.Ed.2d 673 (1980). The United States Supreme Court has held that a municipality is a "person" within the meaning of § 1983, and therefore may be held "`liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.'" Monell v. Department of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (quoting the language of § 1983). Accordingly, New Mexico state courts must entertain § 1983 claims against municipalities, and state law sovereign immunity is neither a defense nor a bar to subject matter jurisdiction. See Martinez, 444 U.S. at 284 n. 8, 100 S.Ct. at 558-59 n. 8; cf. Daddow, 120 N.M. at 105-06, 898 P.2d at 1243-44 (local school board is a "person" under § 1983 and may be sued in New Mexico state court). In the case before us, the district court erroneously dismissed Plaintiff's § 1983 claims for just this reason, and therefore the decision must be reversed. See generally Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation § 1.14 (3d ed. 1991); Charles A. Wright, Law of Federal Courts § 45, at 287-92 (5th ed. 1994) (state enforcement of federal law); Kenneth J. Wilbur, Comment, Concurrent Jurisdiction and Attorney's Fees: The Obligation of State Courts to Hear Section 1983 Claims, 134 U.Pa.L.Rev. 1207 (1986).
7. Although the court below based its dismissal on a lack of jurisdiction and not on a failure to state a claim upon which relief can be granted, the district court nonetheless intimated serious reservations about the viability of Plaintiff's constitutional claims. On this appeal, we need not and do not decide whether Plaintiff states a valid claim for violation of federal constitutional rights. That question is for the district court to address in the first instance. However, because we are remanding this case for further proceedings, we do observe that Plaintiff's claims under the United States Constitution are not without support. See Mountain States Legal Found. v. Denver Sch. Dist. No. 1, 459 F.Supp. 357, 360-61 (D.Colo.1978); Palm Beach County v. Hudspeth, 540 So.2d 147, *339 154 (Fla.Dist.Ct.App.1989). In addition, a number of judicial authorities, although resting their holdings on other grounds, such as state law, find support in the constitution for the general proposition that, at some threshold level, a public entity must refrain from spending public funds to promote a partisan position during an election campaign. See, e.g., Stanson v. Mott, 17 Cal.3d 206, 130 Cal.Rptr. 697, 704-05, 551 P.2d 1, 8-9 (1976) (Tobriner, J.); Anderson v. City of Boston, 376 Mass. 178, 380 N.E.2d 628, 635-39 (1978), appeal dismissed, 439 U.S. 1060, 99 S.Ct. 822, 59 L.Ed.2d 26 (1979); Citizens to Protect Pub. Funds v. Board of Educ., 13 N.J. 172, 98 A.2d 673, 677-78 (1953); Burt v. Blumenauer, 299 Or. 55, 699 P.2d 168, 174-75 (1985) (en banc); cf. Alabama Libertarian Party v. City of Birmingham, 694 F.Supp. 814, 817-18 (N.D.Ala.1988); Miller v. California Comm'n on Status of Women, 151 Cal.App.3d 693, 198 Cal.Rptr. 877, 883 (Ct.), appeal dismissed, 469 U.S. 806, 105 S.Ct. 64, 83 L.Ed.2d 15 (1984). Also, several commentators have suggested that the federal Constitution prohibits governmental entities from spending public funds to promote particular positions in certain circumstances. See generally Robert D. Kamenshine, The First Amendment's Implied Political Establishment Clause, 67 Cal.L.Rev. 1104 (1979); Steven Shiffrin, Government Speech, 27 UCLA L.Rev. 565 (1980); Mark G. Yudof, When Governments Speak: Toward a Theory of Government Expression and the First Amendment, 57 Tex.L.Rev. 863 (1979); Edward H. Ziegler, Government Speech and the Constitution: The Limits of Official Partisanship, 21 B.C.L.Rev. 578 (1980). Although it may be a fine line between education, on the one hand, and advocating a partisan position, on the other, courts have enjoined officials from crossing it. In one instance, the California Supreme Court noted the possibility of requiring an official to reimburse the public treasury for public funds spent overzealously in this fashion. Mott, 130 Cal.Rptr. at 709-12, 551 P.2d at 13-16. We also note the parallel observations of Judge Parker of the United States District Court for the District of New Mexico in a companion case to this one regarding constitutional problems which may arise,
where governments and governmental employees go beyond either, one, providing neutral information about issues on a ballot or, two, expressing personal views on election issues, as any citizen has the right to do under the First Amendment, going beyond that to the point of using public funds derived in part from taxes paid by those holding opposing views to advocate how the county electorate should vote on the election issue. So I think that there is some law supporting plaintiff's constitutional claims.

Mootness
8. The City suggests that even if the district court did have jurisdiction over Plaintiff's § 1983 claims and dismissed them in error, the case is now moot because the election has come and gone. We disagree.
9. In addition to injunctive and declaratory relief, Plaintiff's original complaint requested an award of costs and attorney fees, plus "[a]ny and all further relief to which the Plaintiff may be entitled, and which this Court deems just and proper." Plaintiff then attempted unsuccessfully to amend his complaint to add a request for compensatory damages. Recent federal cases have held that a claim for past violation of constitutional rights may entitle a party to nominal damages, and that possibility protects a § 1983 claim from mootness whether or not injunctive or declaratory relief is still available. See Yniguez v. Arizona, 975 F.2d 646, 647 (9th Cir.1992); Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1526-27 (10th Cir.1992); O'Connor v. City & County of Denver, 894 F.2d 1210, 1215-16 (10th Cir.1990); Griffith v. Teran, 807 F.Supp. 107, 108 (D.Kan.1992); see also Carey v. Piphus, 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978). This is true even when the complaint does not specifically request nominal damages but merely requests all relief to which the plaintiff is entitled. See Yniguez, 975 F.2d at 647 n. 1.
10. If Plaintiff can persuade the district court that the City violated the federal constitution, then, "[i]f proven, a violation of First Amendment rights concerning freedom of expression entitles a plaintiff to at least *340 nominal damages." Campbell, 962 F.2d at 1526-27. In the event Plaintiff on remand is allowed to amend the complaint and add compensatory damages, his claim would become all the more justiciable. "A claim for nominal damages arising from past constitutional violations is sufficient to prevent dismissal for mootness even though the claim for injunctive relief has been rendered moot." Griffith, 807 F.Supp. at 108. For these reasons, we cannot agree with the City that this case is moot just because the election has already been held.
11. In addition, Plaintiff may have a claim for attorney fees under 42 U.S.C. § 1988. An award of nominal damages in a § 1983 lawsuit makes the plaintiff the "prevailing party" and may justify attorney fees. See Farrar v. Hobby, 506 U.S. 103, 107-12, 113 S.Ct. 566, 571-73, 121 L.Ed.2d 494 (1992) (discussion of standards for determining whether party awarded nominal damages in § 1983 action should be awarded attorney fees); Koopman v. Water Dist. No. 1, 41 F.3d 1417, 1420-21 (10th Cir.1994) (remand to determine attorney fees where plaintiff's lawsuit precipitated constructive changes in the legal system, yet plaintiff only recovered one dollar in nominal damages). See generally Nahmod, supra, § 10.02. Given the early stage of this case, we intimate no opinion as to whether an award of attorney fees might ultimately be appropriate.

State Claims
12. We resolve the justiciability of Plaintiff's state law claims in a different fashion. New Mexico district courts have general jurisdiction over disputes arising under state laws as well as the state Constitution. See N.M. Const. art. VI, § 13; Sundance Mechanical & Util. Corp. v. Atlas, 109 N.M. 683, 687, 789 P.2d 1250, 1254 (1990); State v. Bailey, 118 N.M. 466, 468-69, 882 P.2d 57, 59-60 (Ct.App.), cert. denied, 118 N.M. 256, 880 P.2d 867 (1994). At one time, common law sovereign immunity was perceived as an exception to the general rule, barring state court jurisdiction over claims against a municipality even for injunctive relief. See Sangre de Cristo Dev. Corp., 84 N.M. at 347, 503 P.2d at 327. That "archaic principle" is no longer the law in New Mexico. See Hicks v. State, 88 N.M. 588, 589, 544 P.2d 1153, 1154 (1975) (abolishing common law sovereign immunity for tort actions, citing Sangre de Cristo); DeVargas Sav. & Loan Ass'n v. Campbell, 87 N.M. 469, 472, 535 P.2d 1320, 1323 (1975) ("It seems fundamental that a plaintiff has standing to protect himself against injury as a result of unlawful governmental action, even in the absence of a controlling statute or constitutional provision."); see also NMSA 1978, § 41-4-17 (Repl. Pamp.1989) ("Nothing in this section [of the Tort Claims Act] shall be construed to prohibit any proceedings for ... injunction[.]"). Therefore, we observe that the district court did have jurisdiction to decide Plaintiff's state law claims and wrongfully dismissed them on jurisdictional grounds.
13. However, the events of August 30, 1994, have rendered moot Plaintiff's claims for injunctive relief. Unlike federal law, New Mexico has no statute analogous to § 1983 that would provide for damages against government entities or their officials for past violations of state statutes or the state Constitution. Cf. Tort Claims Act, NMSA 1978, § 41-4-12 (Repl.Pamp.1989) (authorizing damages actions for deprivation of rights under the constitution and laws of the United States or New Mexico but only against law enforcement officers). Plaintiff has not sought relief under any other potential theory of damages, and accordingly we do not address the merits of any such claim. See, e.g., Jersey City v. Hague, 18 N.J. 584, 115 A.2d 8 (1955) (breach of fiduciary duty, restitution). Therefore, without a viable claim for damages under state law, Plaintiff's present state law claims are moot and no longer justiciable. We cannot reverse even though the district court erred in dismissing them.
14. Accordingly, we reverse the dismissal of Plaintiff's federal claims and remand for further proceedings consistent with this opinion. We affirm the dismissal of Plaintiff's state law claims.
15. IT IS SO ORDERED.
HARTZ and BUSTAMANTE, JJ., concur.