1998-NMCA-090

963 P.2d 522

**Bruce WILLIAMS, Plaintiff–Appellant,**

v.

**BOARD OF COUNTY COMMISSIONERS OF SAN JUAN COUNTY, Navajo Nation, Gerald Cly, in his individual and official capacity, Jane Doe, in her individual and official capacity, and Peterson Zah, in his individual and official capacity, Defendants–Appellees.**

No. 18007.

Court of Appeals of New Mexico.

April 16, 1998.

Certiorari Denied July 6, 1998.

Lana E. Marcussen, Albuquerque, for Appellant.

Christian C. Doherty, Albuquerque, for Appellee Board of County Commissioners of San Juan County.

James Jay Mason, Mason, Isaacson & Macik, P.A., Gallup, for Appellee Navajo Nation.

## OPINION

APODACA, Judge.

{1} Plaintiff sued Defendants for alleged civil rights violations and various torts arising from the issuance of a traffic ticket. We first address whether this Court has jurisdiction to consider Plaintiff's appeal from the October 16, 1996, order. We then consider Plaintiff's appeals from two orders of the district court: (1) one dated October 16, 1996 dismissing his claims against the San Juan County Defendants based on improper venue; and (2) the other dated November 7, 1996 granting summary judgment in favor of the Navajo Nation and individual Navajo Defendants based on lack of jurisdiction and immunity. We affirm dismissal of Plaintiff's claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Plaintiff, a non-Indian, was driving his vehicle on State Highway 666. Highway 666 is a state right of way located within the boundaries of the Navajo Nation. Navajo police officer Gerald Cly stopped Plaintiff for speeding. Cly was cross-deputized as a San Juan County Sheriff's deputy and commissioned as a Bureau of Indian Affairs Special Deputy Police Officer. He also was certified by the New Mexico State Police.

{3} Officer Cly issued a Navajo speeding ticket to Plaintiff, citing Navajo law. Plaintiff refused to sign the ticket but stated he would sign a state traffic citation issued by a state certified officer. When Plaintiff refused to cooperate, Officer Cly called another Navajo police officer for backup; Plaintiff was then arrested and taken to the San Juan County Detention Center.

{4} Plaintiff later filed this lawsuit in Santa Fe County. He challenged the Navajo police officers' authority to issue a Navajo citation and to arrest him under a mutual aid agreement with San Juan County. *See* NMSA 1978, §§ 29–8–1 to –3 (1971). Plaintiff claimed that the mutual aid agreement was invalid because it lacked the approval of the Governor of New Mexico. Plaintiff also challenged the officers' authority to handcuff him and to transport him by a Navajo police vehicle to the San Juan County Detention Center.

{5} Plaintiff sued various government actors and entities, some of which are not involved in this appeal because they were previously dismissed as parties. Plaintiff al-

leged various federal civil rights violations and torts by the Board of County Commissioners of San Juan County. *See* 42 U.S.C. §§ 1983, 1985 (1994 & Supp.1996). Plaintiff also sued the Navajo Nation for various civil rights violations and for the commission of a tort. *See* 25 U.S.C. § 1302 (1983). Plaintiff sued the Navajo police officers, both in their official and individual capacities, for alleged violations of 42 U.S.C. § 1983 and for various torts. Finally, Plaintiff sued the Navajo Nation President, Peterson Zah (Nation's President), both in his individual and official capacity, for an alleged violation of 42 U.S.C. § 1983.

{6} The San Juan County Commissioners filed a motion to dismiss for improper venue. In an order dated October 16, 1996, the district court granted this motion. The Navajo Defendants filed a motion for summary judgment, which was granted on November 7, 1996, based on immunity and lack of jurisdiction.

## II. DISCUSSION

### A. Adequacy Of The Notice Of Appeal

{7} Plaintiff appeals from orders that were final pursuant to Rule 1–054(C)(2) NMRA 1998 ("When multiple parties are involved, judgment may be entered adjudicating all issues as to one or more, but fewer than all parties. Such judgment shall be a final one unless the court, in its discretion, expressly provides otherwise . . . ."). *See also Bracken v. Yates Petroleum Corp.,* 107 N.M. 463, 463, 760 P.2d 155, 155 (1988) (although not an adjudication on the merits, a dismissal of the complaint for lack of venue is nonetheless a final order for purposes of appeal). Our calendar notice requested that Plaintiff and the San Juan County Commissioners address the timeliness and place of filing of Plaintiff's notice of appeal of the October 16, 1996 order. This issue affects our jurisdiction. *See* Rules 12–201(A), –202(A) NMRA 1998.

{8} Rule 12–201(A) requires the filing of a notice of appeal within thirty days after the judgment or order appealed from is filed. Rule 12–202(A) requires the filing of a notice of appeal with the district court clerk. The record reflects that Plaintiff filed his notice of appeal "in open court," not in the district court clerk's office, on November 15, 1996. According to the record, however, the notice of appeal was later filed in the clerk's office on November 22, 1996. The November 22, 1996, notice of appeal satisfied both Rule 12–201(A) and Rule 12–202(A) regarding the November 7, 1996 order.

{9} November 15, however, was the thirtieth day from the October 16, 1996, order. As a result, Plaintiff timely appealed the October 16, 1996, order only if the November 15, 1996, "open court" filing satisfied Rule 12–202(A).

■ {10} Plaintiff contends that he mailed his notice of appeal to the district court clerk's office on November 10, within the requisite thirty-day period. Plaintiff's counsel stated that she received the returned and unfiled notice of appeal on November 16, 1996, one day after the deadline. Plaintiff alleges that the clerk's office rejected the notice because it did not state that Plaintiff was appealing to this Court. *See* Rule 12–202(B)(4). These contentions, however, are not of record and this Court will therefore not consider them. *See State ex rel. Alleman v. Shoats,* 101 N.M. 512, 517, 684 P.2d 1177, 1182 (Ct.App.1984) (holding that appellate court will not review matters not of record). Plaintiff had the obligation to supplement the record with the allegedly rejected notice of appeal. *See Dillard v. Dillard,* 104 N.M. 763, 765, 727 P.2d 71, 73 (Ct.App. 1986) (appellant has a duty of providing an adequate record sufficient to review the issue on appeal).

■ {11} *Govich v. North American Systems, Inc.,* 112 N.M. 226, 230, 814 P.2d 94, 98 (1991), held that appellate rule requirements are properly characterized as "mandatory," as opposed to "jurisdictional" requirements. Plaintiff did not file his notice of appeal in the district court clerk's office until November 22, 1996. He did, however, file his notice of appeal in open court on November 15, 1996. Because the clerk is merely an arm of the court, filing with the court rather than its agent constituted substantial compliance with Rule 12–202(A). *See Halfen v. United States,* 324 F.2d 52, 54

(10th Cir.1963); *Boykin v. Huff,* 121 F.2d 865, 873 (D.C.Cir.1941). We therefore address the merits of Plaintiff's appeal of the October 16, 1996 order, as well as the November 7, 1996 order.

### B. Dismissal Of Plaintiff's Suit Against The Navajo Nation And The Native–American Defendants

#### 1. Standard Of Review

{12} Summary judgment is proper if no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *See Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992).

#### 2. Navajo Nation

■ {13} Case law establishes that Indian tribes are generally immune from suit in state courts without their consent. *See Puyallup Tribe, Inc. v. Department of Game,* 433 U.S. 165, 172, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977) ("Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe."); *Sac & Fox Nation v. Hanson,* 47 F.3d 1061, 1065 (10th Cir.1995) (without an explicit waiver, the Nation is immune from suit in state courts, even if suit results from commercial activity occurring off the Nation's reservation); *DeFeo v. Ski Apache Resort,* 120 N.M. 640, 642, 904 P.2d 1065, 1067 (Ct.App.1995).

{14} Although sovereign immunity may be waived, *see Puyallup Tribe,* 433 U.S. at 172, 97 S.Ct. 2616; *DeFeo,* 120 N.M. at 642, 904 P.2d at 1067, Plaintiff has not alleged an express waiver by the Navajo Nation or its officials and employees. We note that the mutual aid agreement between the Navajo Nation and San Juan County states, "[N]othing in this Agreement . . . shall be construed as a waiver of sovereign immunity by the Nation. . . ." We therefore hold that the district court properly dismissed Plaintiff's suit against the Navajo Nation.

#### 3. Official Capacities

■ {15} We also affirm the district court's ruling that sovereign immunity barred Plaintiff's suit against the Navajo po-

lice officers and the Nation's President in their official capacities. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 691 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"); *United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 512–13, 60 S.Ct. 653, 84 L.Ed. 894 (1940) (scope of Indian Nations' immunity is co-extensive with federal common law governmental immunity); *DeFeo,* 120 N.M. at 642, 904 P.2d at 1067; *Ford v. New Mexico Dep't of Pub. Safety,* 119 N.M. 405, 410–11, 891 P.2d 546, 551–52 (Ct.App.1994).

{16} We believe that the district court properly dismissed Plaintiff's suit against the Navajo police officers and the Nation's President in their official capacities. These Defendants were entitled to the immunities afforded to the Navajo Nation. *See Bruette v. Knope,* 554 F.Supp. 301, 304 (E.D.Wis.1983); *Romero v. Peterson,* 930 F.2d 1502, 1505 (10th Cir.1991); *Davis v. Littell,* 398 F.2d 83, 84 (9th Cir.1968); *Smith v. Babbitt,* 875 F.Supp. 1353, 1363 (D.Minn.1995).

{17} We disagree with Plaintiff's argument that the holding in *Strate v. A–1 Contractors,* 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), dictates that a state court must consider the merits of his claims. (BIC 16) *Strate* addressed tribal court jurisdiction. The decision in *Strate* was independent of case law holding that Indian nations may not be sued in state courts.

{18} *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), another case on which Plaintiff relies, involved a suit by a Native American against the State of Florida in federal court, raising Eleventh Amendment implications. This appeal, on the other hand, addresses the propriety of a non-Indian's suit against an Indian nation in state court. *Seminole Tribe* is therefore not analogous.

### 4. Individual Capacities

#### a. Section 1983 Claims

■ {19} We also affirm the district court's dismissal against the Navajo police officers and the Nation's President in their individual capacities for violations of 42 U.S.C. § 1983. Section 1983 provides a civil action for the violation of federal rights by a person acting under color of state law. State district courts share concurrent jurisdiction with the federal courts over § 1983 claims for the denial of federal constitutional rights. *See Carter v. City of Las Cruces*, 1996–NMCA–047, ¶ 5, 121 N.M. 580, 915 P.2d 336.

■ {20} Native American tribes and those acting under tribal law do not act under color of state law within the meaning of § 1983. *See, e.g., Chapoose v. Hodel*, 831 F.2d 931, 934–35 (10th Cir.1987) (tribal action cannot be equated to state or territorial action in order to satisfy the "state action" prerequisite to suit under civil rights statute). In their individual capacities, however, Native–American actors may be subject to a § 1983 claim if their actions were pursuant to state authority. *See, e.g., Evans v. McKay*, 869 F.2d 1341, 1348 (9th Cir.1989) (indicating that circumstances may exist where tribal defendants act jointly with state or local officials for § 1983 purposes); *cf. McKinney v. Oklahoma Dep't of Human Servs.*, 925 F.2d 363 (10th Cir.1991) (director of tribal health services was not acting under color of state law).

■ {21} "If an individual is possessed of state authority and purports to act under that authority, his action is state action." *Griffin v. Maryland*, 378 U.S. 130, 135, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964) (amusement park guard deputized as a sheriff). Private persons become state actors for § 1983 purposes if jointly engaged with state officials in depriving an individual's rights. *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1429 (10th Cir.1984); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (a state may be liable for a private decision only when it has exercised coercion or such encouragement that the choice must be deemed State's).

■ {22} For purposes of our discussion, we will assume, without deciding, that the individual Native Americans acted under color of state law. We believe, nevertheless, that summary judgment was properly granted on their claim of qualified immunity. Qualified immunity protects officials whose conduct does not contravene "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see Kennedy v. Dexter Consol. Schs.*, 1998-NMCA-051, ¶¶ 32–34, 124 N.M. 764, 955 P.2d 693 (Ct.App.1998). This immunity extends to law enforcement officers. *See Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

{23} A qualified immunity defense thus shields "all but the plainly incompetent or those who knowingly violate the law." *See id.* at 341, 106 S.Ct. 1092. We apply an objective standard to determine whether a defendant violated clearly established statutory or constitutional rights of which a reasonable person would have known. *See Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir.1994).

■ {24} When a defendant pleads qualified immunity and raises it in a summary judgment motion, the plaintiff must demonstrate that (1) the defendant's alleged conduct violated a constitutional or statutory right, and (2) the right was clearly established at the time of the conduct. *See Romero v. Sanchez*, 119 N.M. 690, 692, 895 P.2d 212, 214 (1995); *Howard v. Dickerson*, 34 F.3d 978, 981 (10th Cir.1994). To be "clearly established," the right's contours must be sufficiently clear that a reasonable official would understand that his or her action violates that right. *See Anderson*, 483 U.S. at 640, 107 S.Ct. 3034; *see also Albright*, 51 F.3d at 1535. If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity. *See Albright*, 51 F.3d at 1535.

■ {25} Plaintiff's problem in this appeal is that he fails to explain how the Navajo Defendants violated any federal law, statutory or constitutional, much less any law that was "clearly established" at the time of his

arrest. Consequently, we believe the district court properly granted the Navajo Defendants' summary judgment on the ground that they were entitled to qualified immunity.

#### b. Tort Claims

■ {26} We also affirm dismissal of Plaintiff's tort claims against the Navajo police officers under the Tort Claims Act. The Tort Claims Act, NMSA 1978, §§ 41–4–1 through –27 (1976, as amended through 1996) applies to suits against governmental entities and public employees. *See* § 41–4–2(A). The Act's definitions of "governmental entity" and "public employee" do not include the Navajo police officers. *See* § 41–4–3(B) (defining "governmental entity" as "the state or any local public body"), (F) (defining "public employee" as "any officer, employee or servant of a governmental entity"). Officer Cly's cross-deputization as a San Juan County sheriff did not, in itself, make him a public employee. *See Romero*, 930 F.2d at 1506–07 (holding that cross-deputization not a determinative factor of whether officers were federal or tribal actors).

#### C. Dismissal Of Plaintiff's Suit Against The San Juan County Defendants

{27} Plaintiff sued the San Juan County Defendants for various violations pursuant to the Tort Claims Act, Sections 41–4–1 through –27, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 (conspiracy to interfere with civil rights). The San Juan County Defendants timely raised their venue defense in their amended answer. They filed the amended answer within the time available to amend as a matter of course. *See* Rules 1–021(B), (H)(1)(b), –015(A) NMRA 1998.

■ {28} The district court dismissed Plaintiff's claims against the San Juan County Defendants on the basis that venue in Santa Fe County was improper. The record proper reflects that Plaintiff conceded that Section 41–4–18(B) is the controlling venue statute. The parties' arguments below and on appeal address whether Section 41–4–18(B) mandates venue in San Juan County. The motion to dismiss for improper venue raises a question of law, which we review de

novo. *See Davey v. Davey*, 77 N.M. 303, 305, 422 P.2d 38, 40 (1967); *Gallegos v. State Bd. of Educ.*, 1997–NMCA–040, ¶ 11, 123 N.M. 362, 940 P.2d 468. "In determining venue, the court must look to the complaint and the character of the judgment [that] may be rendered." *United Nuclear Corp. v. Fort*, 102 N.M. 756, 760, 700 P.2d 1005, 1009 (Ct. App.1985).

■ {29} Section 41–4–18(B) states:

> Venue for any claim against the state or its public employees, pursuant to the Tort Claims Act, shall be in the district court for the county in which a plaintiff resides, or in which the cause of action arose, or in Santa Fe county. *Venue for all other claims pursuant to the Tort Claims Act, shall be in the county in which the principal offices of the governing body of the local public body are located.*

(Emphasis added.) The second sentence of Section 41–4–18(B) is mandatory regarding venue actions against governmental entities other than the State and its employees. *See, e.g., Elephant Butte Irrigation Dist. v. Regents of N.M. State Univ.*, 115 N.M. 229, 238, 849 P.2d 372, 381 (Ct.App.1993) (word "shall" is mandatory). The amended complaint named the Board of County Commissioners of San Juan County as a defendant. It is not disputed that the principal offices of the San Juan County Defendants are located in San Juan County. Plaintiff's allegations of tortious conduct by the Board of Commissioners would implicate the Tort Claims Act, Sections 41–4–1 through –27, in the judgment. As a result, San Juan County was the proper venue for Plaintiff's tort claims against the San Juan County Defendants.

■ {30} Additionally, NMSA 1978, Section 38–3–2 (1953) mandates that the other claims against the county be brought in San Juan County. This law provides:

> All civil actions not otherwise required by law to be brought in the district court of Santa Fe County, wherein any municipality or board of county commissioners is a party defendant, shall be instituted only in the district court of the county in which such municipality is located, or for which

such board of county commissioners is acting.

*Id.* Consequently, San Juan County was also the proper venue for Plaintiff's federal claims against the San Juan County Defendants.

 {31} Plaintiff incorrectly argues that venue was proper in Santa Fe County because the Attorney General was initially a party. No statute or rule exists permitting venue in Santa Fe County for the claim against San Juan County just because the Attorney General is also a defendant. *Compare Schwartz v. Diehl,* 568 P.2d 280, 283 (Okla.1977) (holding that venue over bonding entity did not establish venue over public officials) *with Elephant Butte Irrigation Dist.,* 115 N.M. at 237–38, 849 P.2d at 380–81 (finding pendent venue because a state statute gave exclusive jurisdiction to the court hearing a water rights adjudication). The procedural rules permitting the joinder of defendants do not supersede the requirement of the venue statutes. *See* Rule 1–082 NMRA 1998 (Rules of Civil Procedure "shall not be construed to extend or limit . . . venue").

{32} Plaintiff's argument that NMSA 1978, Section 38–3–8 (1889) required San Juan County Defendants to file for a change of venue within "one term of court" does not persuade us. Plaintiff did not argue the applicability of this particular statute below. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) ("Where the record fails to indicate that an argument was presented to the court below, unless it is jurisdictional in nature, it will not be considered on appeal."). He did, however, apparently concede below that an analogous section, NMSA 1978, Section 38–3–3 (1965) was inapplicable. Section B of that statute provides in relevant part, "Any party in any civil case . . . who desires a change of venue . . . shall move for a change of venue on or before the first day of any regular or special term of court." Assuming Plaintiff properly preserved this issue for appeal, he still would not prevail. Section 38–3–8 contemplates a "change" of venue, not a failure to comply with mandatory venue provisions. Dismissal of an action, rather than a transfer, is appropriate where venue is improper. *See Team*

*Bank v. Meridian Oil, Inc.,* 118 N.M. 147, 151, 879 P.2d 779, 783 (1994); *Jones v. New Mexico State Highway Dep't,* 92 N.M. 671, 672, 593 P.2d 1074, 1075 (1979). Consequently, we hold that the district court properly dismissed the complaint against the San Juan County Defendants based on improper venue.

## III. CONCLUSION

{33} We affirm the district court's October 16, 1996, order dismissing Plaintiff's claims against the San Juan County Defendants based on improper venue. We also affirm the district court's November 7, 1996, order granting summary judgment in favor of the Navajo Defendants based on lack of jurisdiction and immunity from suit.

{34} **IT IS SO ORDERED.**

HARTZ, C.J., and BOSSON, J., concur.