1999-NMCA-111

988 P.2d 311

Shannon SUGG, Plaintiff–Appellee,

v.

ALBUQUERQUE PUBLIC SCHOOL
DISTRICT, et al., Defendants–
Appellants.

Nos. 19,270, 19,271.

Court of Appeals of New Mexico.

June 23, 1999.

Certiorari Granted, No. 19,270,
Aug. 16, 1999.

**3**

Daymon B. Ely, Cynthia A. Fry, Albuquerque, for Appellee.

Arthur D. Melendres, George R. Mcfall, Michael L. Carrico, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Appellant.

## OPINION

ALARID, Judge.

{1} Plaintiff, Shannon Sugg, filed a 42 U.S.C. § 1983 (1994) suit against the Albu-querque Public Schools (APS); the School Board; the School Board members; Jack Bobroff and Peter Horoschak, both the former and the current superintendents; Jimmy Juarez, Sandia High School's principal; Vic Fantozzi, a Sandia High School counselor; Patricia Watts, a school administrator; and Jim Wilson, a Sandia High School assistant principal (Defendants). Defendants subsequently filed two motions for summary judgment. The trial court denied both motions. One of the motions related to the individually named Defendants' qualified immunity. It is this motion that we discuss today. Concluding, for the purposes of qualified immunity, that these Defendants have not violated Plaintiff's right to due process, we reverse the order of the trial court denying summary judgment as to these individually named Defendants.

*FACTS*

{2} Plaintiff was a freshman at Sandia High School, a school within the Albuquerque Public School District. In the fall of 1993, at the beginning of Plaintiff's freshman year, Alicia Andres allegedly began threatening Plaintiff. Plaintiff claims that the threats escalated into pushing, shoving, kicking and more threats by Andres. Encounters such as these occurred approximately four or five times. Plaintiff sought the assistance of a school counselor, Vic Fantozzi. Initially, Mr. Fantozzi told her to try and work things out with Andres. Mr. Fantozzi inquired into Plaintiff's own conduct. He thought her actions may have perpetuated the confrontation. He also spoke with Andres about the situation.

{3} On a latter occasion, Andres and a group of girls surrounded Plaintiff. Andres threatened Plaintiff with a knife.

{4} On September 28, 1993, Plaintiff's parents received a notice from the school and a phone call from a teacher indicating that Plaintiff had missed several of her fourth period English classes. Plaintiff's mother went to the school to speak with someone regarding Plaintiff's absences. Plaintiff's mother was instructed to speak with Patricia Watts, a school administrator. Plaintiff's father participated in the conference via the telephone. When Plaintiff was called into

**4**

the meeting, she told her parents and Ms. Watts about the student that was threatening to stab her or push her down the stairs. Ms. Watts asked Plaintiff what the student's name was and tried to identify the student on the school computer. Ms. Watts was unable to locate the name of the student. Apparently, Plaintiff did not give Ms. Watts the correct spelling of the student's last name. Ms. Watts told Plaintiff and her parents that she would need the exact spelling of the student's name to proceed. Ms. Watts told Plaintiff that she should not get into a fight with Andres because she would be suspended from school. After the conversation, Plaintiff was instructed to go back to her classes.

{5} Later that same afternoon, after lunch, Andres started a fight with Plaintiff in the hallway. During the confrontation, Andres stabbed Plaintiff in the left shoulder. The fight was eventually ended by Jim Wilson, an assistant principal.

{6} As a result of these events, Plaintiff filed a Section 1983 claim against Defendants.

{7} On May 16, 1997, Defendants filed a motion for summary judgment on the grounds that qualified immunity protected them from suit in their individual capacities and a motion for summary judgment on the question of the § 1983 liability of APS and the School Board. The trial court found that there were "triable issues of material facts" sufficient to deny Defendants' summary judgment motions. Defendants appeal the trial court's denial of both summary judgment motions.

*DISCUSSION*

A. Pendent Jurisdiction

{8} Defendants first address the issue of appellate jurisdiction. Defendants correctly assert that we have jurisdiction over the appeal of the district court's denial of summary judgment based on qualified immunity. Qualified immunity is subject to the collateral order doctrine which grants this Court appellate jurisdiction over suits barred by qualified immunity because qualified immunity is a final bar to suit and is therefore immediately appealable. *See Carrillo v. Rostro,* 114 N.M. 607, 610–11, 613–16, 845 P.2d 130, 133–34, 136–39 (1992). Additionally, Defendants assert that this Court should exercise pendent jurisdiction to address the trial court's denial of their motion for summary judgment regarding the Section 1983 claim against APS and the School Board. We disagree.

{9} Pendent jurisdiction was designed for federal courts of original jurisdiction. *See* Jack H. Friedenthal, et al., *Civil Procedure* § 2.12, at 68 (2d ed.1993); *see generally United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). It allows federal courts to address not only a plaintiff's federal law claims but to also address related claims arising under state law. *See* 28 U.S.C. § 1367 (1994). "The doctrine of pendent jurisdiction ... extends a federal court's power to hear an otherwise non-justiciable state claim." Steven Michael Witzel, *Removing the Cloak of Personal Jurisdiction from Choice of Law Analysis: Pendent Jurisdiction and Nationwide Service of Process,* 51 Fordham L.Rev. 127, 134 (1982). The justification for pendent jurisdiction is judicial economy, fairness and convenience. *See United Mine Workers,* 383 U.S. at 726, 86 S.Ct. 1130.

{10} Courts of general jurisdiction do not need and in fact do not use pendent jurisdiction to address claims that are not yet justiciable because they are not yet final. The denial of summary judgment regarding the Section 1983 claim against APS and the School Board is not yet final, therefore, we decline to address it through pendent jurisdiction. *See Leithead v. City of Santa Fe,* 1997–NMCA–041, ¶ 6, 123 N.M. 353, 940 P.2d 459 (explaining that denial of a pretrial motion for summary judgment is not an appeal from a final judgment because the result merges in the subsequent trial).

B. Standard of Review

{11} Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See Williams v. Board of Comm'rs,* 1998–NMCA–090, ¶ 12, 125 N.M. 445, 963 P.2d 522.

## C. Qualified Immunity

{12} "Employees of state or local governments whose acts violate another person's constitutional rights are not necessarily liable to the other person under § 1983." *Kennedy v. Dexter Consol. Sch.*, 1998–NMCA–051, ¶ 32, 124 N.M. 764, 955 P.2d 693. State officials performing discretionary functions are entitled to the protection of qualified immunity. *See Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir.1998). Here Defendants argue that because they are entitled to qualified immunity, the trial court erred in denying their motion for summary judgment. We agree.

{13} Because we are focusing on qualified immunity, we will only be addressing liability with respect to the individually named Defendants, and not APS or the School Board.

{14} In examining a claim for qualified immunity, we must first ask if Plaintiff has asserted a violation of her constitutional rights at all and then determine whether the constitutional right was clearly established at the time of Defendants' actions. *See Armijo*, 159 F.3d at 1260. Once Defendants have asserted qualified immunity in a summary judgment motion, the burden shifts to Plaintiff to come forward with sufficient facts to display that Defendants violated a constitutional right, and to illustrate that the law was clearly established at the time when the alleged violation occurred. *See id.; Williams*, 125 N.M. 445, 963 P.2d 522, 1998–NMCA–090, ¶ 24. If Plaintiff fails to establish either element, Defendants are entitled to summary judgment. *See Williams*, 125 N.M. 445, 963 P.2d 522, 1998–NMCA–090, ¶ 24.

{15} Plaintiff asserts that the Due Process Clause of the Fourteenth Amendment imposed a clearly established duty upon school officials to protect her from this stabbing. The Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." At its root however, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The Due Process Clause is not a guarantee of a minimal level of safety and security. *See id.* There are, however, two exceptions to this interpretation. The first exception is the special relationship doctrine. This exception exists when a state maintains sufficient control over an individual to prompt an affirmative duty to care for and protect that individual. The second exception is the danger creation theory. The danger creation theory imposes liability on a state when it creates the danger that harmed the individual. *See Armijo*, 159 F.3d at 1260.

### 1. Special Relationship Doctrine

{16} Defendants assert, and Plaintiff does not argue to the contrary, that there was no special relationship between Defendants and Plaintiff. We agree.

{17} A special relationship imposes upon the state a responsibility for the safety of individuals that the state takes into custody and holds there against their will. *See Armijo*, 159 F.3d at 1261; *Stevens v. Umsted*, 131 F.3d 697, 701–02 (7th Cir.1997) (discussing the imposition on states of a duty to care for and protect individuals in state custody). "Inaction by the state in the face of a known danger is not enough to trigger the obligation; according to *DeShaney*, the state must have limited in some way the liberty of a citizen to act on his own behalf." *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.1993). Many courts have addressed this issue in the context of schools and held that schools do not have a duty to protect students from assaults perpetrated by other students because a special relationship does not exist between schools and students. *See Armijo*, 159 F.3d at 1261 (stating that schools have no duty to protect students from assaults by other students under the Due Process Clause); *Graham v. Independent Sch. Dist. No. I–89*, 22 F.3d 991, 994–95 (10th Cir.1994) (holding that school attendance laws do not create an affirmative duty to protect students under the Fourteenth Amendment); *Dorothy J. v. Little Rock Sch.*

*Dist.,* 7 F.3d 729, 732 (8th Cir.1993) (holding that school attendance requirements are not so restrictive as to impose custodial duty to protect students in schools); *Maldonado v. Josey,* 975 F.2d 727, 731 (10th Cir.1992) (holding that compulsory school attendance laws do not impose an affirmative duty to protect students); *D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1369–72 (3d Cir.1992) (en banc) (explaining why there is no special relationship between schools and students). This has been held even when the school knew or should have known of the potential for the assault. *See Graham,* 22 F.3d at 994–95 (citing *Reed,* 986 F.2d at 1125). Here it is uncontested that the individual Defendants did not restrict Plaintiff's liberty in a way that creates a special relationship. Therefore, Defendants had no constitutional duty to protect Plaintiff from an attack by another student.

### 2. Danger Creation Theory

{18} Under the danger creation theory, the state may be culpable for the acts of third parties when the state creates the dangerous situation or leaves the individual more exposed to the danger. *See Stevens,* 131 F.3d at 704–05; *Armijo,* 159 F.3d at 1262. To support a claim of state created danger, Plaintiff must verify facts establishing an affirmative act on the part of the State that created the danger to Plaintiff or left her more vulnerable to the danger. *See Stevens,* 131 F.3d at 704–05. There is a six-part test to determine whether Defendants created a special danger for Plaintiff. Plaintiff must illustrate that: (1) she is a member of a limited and specifically definable group; (2) Defendants' conduct exposed Plaintiff to a substantial risk of proximate, immediate and serious harm; (3) the risk was known or obvious; (4) Defendants acted in conscious reckless disregard of the risk; (5) the conduct, as a whole, is conscience shocking; and (6) that Defendants created the danger or increased the danger for Plaintiff in some way. *See Armijo,* 159 F.3d at 1262–63.

{19} First, we will address the possible culpability of Mr. Fantozzi, Ms. Watts, and Mr. Wilson. We do so because it is their alleged conduct that is the thrust of Plaintiff's danger creation argument. Plaintiff does not allege any action by the other named Defendants.

{20} Plaintiff likens herself to the plaintiff in *Armijo.* Plaintiff asserts that she was a member of a specifically definable group of "students who have expressed an immediate risk of harm from other threatening students." Plaintiff also contends that Mr. Fantozzi, Ms. Watts, and Mr. Wilson put her at serious risk of harm by

(1) inappropriately [telling] Ms. Andres that [Plaintiff] had ratted on her; (2) caus[ing Plaintiff] to become distraught by failing to take any action even on the day Ms. Andres said the attack would occur; (3) expressly [sending Plaintiff] back to class in the face of Ms. Andres's [sic] specific threat with the admonition that she could not defend herself; and (4) [standing] by while the attack occurred.

Additionally, Plaintiff claims that these Defendants knew of the harm, acted in conscious disregard of the danger and that their behavior was conscience shocking. Last, Plaintiff asserts that because Defendants "ratted" on her and told her not to fight back, they increased her risk of harm.

{21} The facts of *Armijo,* however, are distinguishable from Plaintiff's complaints. In *Armijo,* the plaintiff was a special education student who had expressed thoughts of suicide. After threatening a teacher, the student was suspended from school and sent home, alone, to an empty house where he had known access to firearms. *See Armijo,* 159 F.3d at 1264. The school did not notify the student's parents that he was being taken home. The student committed suicide and his parents sued under § 1983. From these facts, the court found sufficient evidence that the defendants created the danger that led to the student's suicide. *See id.* Even accepting Plaintiff's facts as true, here, as compared to the plaintiff in *Armijo,* Plaintiff was not such a vulnerable student. Most importantly however, is the fact that the danger existed prior to any involvement by Defendants. This negates the argument that Defendants created the danger. "[I]f the danger to the plaintiff existed prior to the state's

7

intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed." *Armijo*, 159 F.3d at 1263. Thus, the danger creation theory does not impose liability on Defendants Fantozzi, Watts, or Wilson and the trial court erred in denying these Defendants' motion for summary judgment. The evidence does not support a violation of Plaintiff's due process rights, therefore we need not address whether Plaintiff's due process rights, under the danger creation theory, were clearly established in 1993.

■ {22} We also reverse the trial court's order denying summary judgment as to Defendants Mary Lee Martin, Bill Rothanbarger, Agatha Lopez, Leonard DeLayo, Don Patterson, Diego Gallegos, Pauline Garcia, Jimmy Juarez, Jack Bobroff, and Peter Horoschak. There is nothing in the record to support the conclusion that they created or caused the danger that allegedly led to the stabbing of Plaintiff. There is nothing in the record, nor does Plaintiff argue, that these individuals were involved in the decisions made concerning Plaintiff or in the counseling of Plaintiff. Lacking any evidence that they caused or created the danger, they are entitled to summary judgment. *See id.* at 1264.

*CONCLUSION*

{23} The facts of this case may be troubling and speak to some of the problems our public schools are facing today. We conclude, however, that Defendants did not violate Plaintiff's constitutional rights. Because Plaintiff has failed to establish a required element of qualified immunity, Defendants are entitled to summary judgment. *See Williams*, 1998–NMCA–090, ¶ 24, 125 N.M. 445, 963 P.2d 522. We, accordingly, reverse the order of the trial court denying Defendants' motion for summary judgment. We remand to the trial court for entry of an order granting summary judgment in favor of the individual Defendants and for further proceedings on the Section 1983 liability question against APS and the School Board, as entities. The parties shall bear their respective costs on appeal.

{24} **IT IS SO ORDERED.**

APODACA and SUTIN, JJ., concur.