James SCHANTZ, Plaintiff, Appellant,

v.

Ada WHITE LIGHTNING and Clara Karls, as Special Administratrix of the Estate of Leroy White Lightning, Deceased, Defendants, Appellees.

Jack F. SCHAFF, Plaintiff, Appellant,

v.

Ada WHITE LIGHTNING and Clara Karls, as Special Administratrix of the Estate of Leroy White Lightning, Deceased, Defendants, Appellees.

No. 9081.

Supreme Court of North Dakota.

June 27, 1975.

Bair, Brown & Kautzmann, Mandan, for plaintiffs, appellants; argued by Malcolm H. Brown, Mandan.

Robert P. Brady, Asst. Atty. Gen., Bismarck, for defendants, appellees.

SAND, Judge.

The Morton County District Court entered judgment dismissing these two consolidated actions for lack of jurisdiction, and this appeal followed.

On or about February 11, 1973, the plaintiffs James Schantz and Jack F. Schaff [hereinafter appellants] were driver and passenger, respectively, in a motor vehicle which was proceeding on a state highway within the boundaries of the Standing Rock Indian Reservation in Sioux County, North Dakota. An accident involving defendants Ada White Lightning and Leroy White Lightning [hereinafter appellees] occurred, causing personal injuries to appellants. As a result of the accident and injuries sustained the appellants brought an action against Ada White Lightning and Clara Karls, as Special Administratrix of the Estate of Leroy White Lightning, deceased. Both appellees were enrolled Indians at the time of the accident.

Appellees failed to answer the action below, whereupon appellants, pursuant to Section 39-10-04, N.D.C.C., caused notice to be given to the North Dakota Attorney General and the North Dakota State Highway Commissioner of their intent to apply for payment of any judgment from the Unsatisfied Judgment Fund if any judgment were to result.

The appellees also refused to sign individual consents to jurisdiction, as permitted under Section 27-19-05, N.D.C.C. The Standing Rock Sioux Tribe has not consented to State jurisdiction as permitted and authorized under Chapter 27-19, N.D.C.C., and Federal law.

The Attorney General of the State of North Dakota, representing the Unsatisfied Judgment Fund, made a special appearance in order to move for dismissal on the ground that the State court lacked jurisdiction to hear or determine the matter and on June 25, 1974, the district court granted the motion to dismiss.

Thereafter the appellants commenced an action in Federal court alleging that 25 U.S.C. § 1322 purportedly deprived the State courts of jurisdiction and that the Federal court had jurisdiction. The case, Schantz et al. v. White Lightning (D.C.N. D.), 386 F.Supp. 1070, was dismissed, from which an appeal was taken to the Eighth Circuit Court which, in affirming the district court dismissal, said, "the legal anomaly is therefore obvious—the non-Indian litigants are left without a forum in which to

pursue their claim." 502 F.2d 67 (C.C.A. 8, 1974).

On September 30, 1974, judgment of dismissal was entered in the Morton County case, from which this appeal is taken.

The recitation of the foregoing facts is for the primary purpose of showing that the appellants have explored all avenues available to them, except the Tribal courts, without success. (We were advised on oral argument that the Tribal court has limited jurisdiction not to exceed $300.00.)

The issue for us to determine on this appeal is whether or not the North Dakota courts have jurisdiction of an action brought by a non-Indian against an enrolled Indian residing on the Indian reservation for injuries resulting from a motor vehicle accident which took place on a state highway within the limits of the Indian reservation on which the enrolled Indian resided.[1]

Chapter 27–19, North Dakota Century Code, providing the method by which Indian civil jurisdiction may be obtained or accepted was enacted in accordance with the provisions of Public Law 280 of the 83rd Congress and Section 203 of the North Dakota Constitution. This subject was further dealt with by Congress on April 11, 1968, by the enactment of Public Law 90–284, Section 402. This latest enactment, in part, provides as follows:

"Sec. 402. (a) The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, with the consent of the tribe occupying the particular Indian country or part thereof which would be affected by such assumption, such measure of jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State."

Appellants relied heavily, before this court, upon Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251, as authority for the State to exercise jurisdiction in this instance. Appellants argue subjunctively that from the discussion in the *Williams* case it could be understood that the United States Supreme Court would have allowed the State to assume jurisdiction if by so doing it would not infringe upon the right of reservation Indians to make their own laws and be ruled by them. The *Williams* case involved an action by a non-Indian against a Navajo Indian for money on goods sold to the Indian on credit. The court ruled that such action would undermine the authority of the tribal courts over reservation affairs and infringe on the right of the Indians to govern themselves in accordance with the treaty between American Indian Tribes and the United States. We fail to understand how the *Williams* case can serve as a basis for this State to assume jurisdiction.[2] If such supposition is correct it would follow that if an action to recover money for goods sold on credit would inter-

---

1. The parties framed the issue somewhat differently, in the following manner: "Do the Courts of the State of North Dakota have jurisdiction over claims arising out of an auto accident which occurred within the exterior boundaries of an Indian Reservation, within the State of North Dakota, between citizens of North Dakota, one of whom is an Indian?" This issue would require the consideration of a question if an Indian could sue a non-Indian.

2. Arizona neither amended its Constitution or laws pursuant to Public Law 280 of the 83rd Congress nor pursuant to Public Law 90–284, April 11, 1968, relating to the manner by which jurisdiction on Indian reservations may be assumed or acquired. Therefore, this case cannot be used as a comparison with the State of North Dakota.

fere and infringe on the right of the Indians to govern themselves, certainly an action to collect money for an injury sustained as a result of an accident would likewise infringe on the rights of the Indians to govern themselves.

■ In Gourneau v. Smith, 207 N.W.2d 256 (N.D.1973), this court had under consideration an almost identical situation, except the parties to the action were both enrolled Indians residing on the Indian reservation in which the accident occurred. This court pointed out that highways within an Indian reservation still constituted Indian country as defined by Federal law. See 18 U.S.C.A. Section 1151. We held that the state courts did not have jurisdiction. We have no reason to conclude otherwise in the instant case.

This court, in White Eagle v. Dorgan, 209 N.W.2d 621, had under consideration a question whether or not the State of North Dakota could impose various excise taxes upon Indians residing on an Indian reservation. This court, relying upon the case of McClanahan v. State Tax Commission of Arizona,[3] 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), concluded that in the absence of an agreement as authorized by congressional Acts by the Tribe submitting to jurisdiction the State had no jurisdiction to impose or collect excise taxes.

This court, in Rolette County v. Eltobgi, 221 N.W.2d 645 (N.D.1974), at syllabus 2, said:

"State assumption of jurisdiction over Indians residing in Indian country is subject to concurrence of Indians pursuant to 25 U.S.C. Section 1326 and concomitant agreement of State."

The agreed statement of facts as presented to this court discloses that neither the Indian defendants, or the Indian tribe, accepted jurisdiction pursuant to the provisions of Chapter 27–19, N.D.C.C.

Significantly, however, this court, in the *Rolette County* case, at page 647, said:

"The passage of Public Law 90–284, Section 406 (25 U.S.C. § 1326), probably makes our statute, Section 27–19–05, N.D.C.C., ineffective for the purpose of allowing individual general acceptance of jurisdiction. We also take judicial notice that the State of North Dakota has not agreed to State jurisdiction over the reservation. See Gourneau v. Smith, 207 N.W.2d 256 (N.D.1973). The Tribe, acting alone, cannot accept State jurisdiction. Kennerly v. District Court of Montana, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971)."

These statements fully apply to the instant case.

In the *Williams* case the United States Supreme Court said:

"Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them. [Citations omitted.]

". . . Congress has followed a policy calculated eventually to make all Indians full-fledged participants in American society. This policy contemplates criminal and civil jurisdiction over Indians by any State ready to assume the burdens that go with it as soon as the educational and economic status of the Indians permits the change without disadvantage to them. [Citation omitted.] Significantly, when Congress has wished the States to exercise this power it has expressly granted them the jurisdiction which Worcester v. Georgia has denied."

From this, and also the *McClanahan* case it can be readily understood that any change from the present case law would require action by the United States Congress. The appellants are asking this court

---

**3.** The United States Supreme Court also called attention to the qualifying phrase, "absent governing Acts of Congress," in its comment in the *Williams* case to emphasize the importance of the congressional enactments.

to assume the duties and responsibilities which are vested solely in the United States Congress. The arguments presented should be addressed to that body.

The appellants argued that this court should treat the Unsatisfied Judgment Fund law differently and in this instance resolve that there is jurisdiction where the defendant is a non-Indian if the Unsatisfied Judgment Fund is a party defendant to the proceedings.

The congressional Acts cited above do not permit piecemeal jurisdiction. The Supreme Court of the State of South Dakota, in the case of In re Hankins' Petition, 125 N.W.2d 839 (S.D.1964), had under consideration a law passed by the State of South Dakota whereby the State would assume jurisdiction on crimes committed on highways running through Indian reservations. The South Dakota Supreme Court held that such legislation was contrary to the Federal legislation, particularly Public Law 280, and that it would proliferate the rule of law enforcement by adding the State as another entity with geographically limited jurisdictions where the Federal and Tribal courts already operate, each with limited subject-matter jurisdiction. The court further observed that such a law would make inescapable the checkerboard jurisdiction condemned in Seymour v. Superintendent, 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346.

This court can no more authorize piecemeal legislation than the Legislature could and we conclude that even the Legislature under existing Federal laws could not enact piecemeal legislation to produce the result proposed by the appellants.

Finally, appellants suggest that this court follow the ruling of the Montana Supreme Court where it assumed jurisdiction in a divorce action, in State ex rel. Iron Bear v. District Court, 512 P.2d 1292 (Mont.1973). In the Iron Bear case neither of the parties were non-Indians; rather, both of the parties were enrolled Indians living on the reservation. In this respect the special concurring opinion points out that this differ-ence is significant. While we are not adopting the reasoning of the Iron Bear case as set forth in the majority or in the special concurring opinion, we do recognize it for the purposes of pointing out that its concepts and rationale would not apply here because in this instance we have a non-Indian bringing an action against enrolled Indians residing on the reservation.

The Congress has set out the mandatory procedure to be followed by the Indian Tribes and the State before the States may assume jurisdiction. The State of North Dakota has enacted Chapter 27–19, N.D. C.C. However, one of its provisions, Section 27–19–05, N.D.C.C., relating to individual acceptance by an Indian, is now not available. In this instance, the Sioux Indians did not take any action pursuant to the congressional Acts or Chapter 27–19, N.D. C.C. The Sioux Indians, not having accepted State jurisdiction as permitted and provided for by the congressional mandate and Chapter 27–19, we conclude that the State did not have, nor did it acquire, jurisdiction for the reasons set forth in the opinion.

We conclude that the district court had no jurisdiction over the defendant White Lightning nor of the subject matter. The judgment of the district court of the two consolidated actions is therefore affirmed.

ERICKSTAD, C. J., PAULSON and PEDERSON, JJ., and DOUGLAS B. HEEN, District Judge, concur.

VOGEL, J., deeming himself disqualified did not participate; DOUGLAS B. HEEN, Judge of the Second Judicial District sitting in his place.