AUSTIN'S EXPRESS, INC., and Walter J. Schnobrich, Plaintiffs,

v.

Ron ARNESON, Special Judge, Crow Tribal Court of the Crow Indian Reservation, Linda Dust, Personal Representative of the Estate of Dallas Dust, Deceased, and Linda Dust, Individually, Defendants.

No. CV 97–133–BLG–JDS.

United States District Court,
D. Montana,
Billings Division.

March 12, 1998.

Gregory G. Murphy, K. Kent Koolen, Moulton, Bellingham, Longo & Mather, PC, Billings, MT, for Austin's Express, Inc., Walter J. Schnobrich.

Robert S. Pelcyger, John Fredericks, III, Fredericks, Pelcyger, Hester & White, Boulder, CO, Marjel Russell, James Yellowtail, Crow Tribal Legal Dept., Billings, MT, for Ron Arneson.

Clarence Belue, Belue Law Office, Billings, MT, for Linda Dust.

ORDER

SHANSTROM, Chief Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment.

## BACKGROUND

On October 24, 1995, Dallas Dust, a member of the Crow Tribe, was fatally injured when he was struck by a truck while he was standing on a portion of the Interstate 90 right-of-way that traverses the Crow Indian Reservation.[1] The truck was driven by Walter Schnobrich, an Idaho resident who is not a member of the Crow Tribe, for Austin's Express, Inc., an Idaho corporation with its principal place of business in the State of Idaho.

Linda Dust, individually and as personal representative of the estate of Dallas Dust, filed a tort action in Crow Tribal Court against Austin's Express and Schnobrich. *Estate of Dallas Dust v. Austin's Express and Walter J. Schnobrich,* civil case no. 96–436. In Crow Tribal Court Austin's Express and Schnobrich moved to dismiss the complaint alleging the tribal court lacked personal jurisdiction over them and lacked subject matter jurisdiction over the controversy. Tribal judge Ron Arneson, denied their motion to dismiss. Austin's Express and Schnobrich then filed this action in federal court seeking a declaration that the tribal court does not have jurisdiction over the Dust tort action currently pending there.

## DISCUSSION

### A. Introduction

Plaintiffs argue, based on *Strate v. A-1 Contractors,* 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) and *Wilson v. Marchington,* 127 F.3d 805 (9th Cir.1997), that the Crow Tribal Court lacks jurisdiction over the tort action filed by Linda Dust.

At the outset of its discussion in *Strate* the United States Supreme Court recognized that its case law has established that, absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances. *Strate,* 520 U.S. at ——, 117 S.Ct. at 1409, 137 L.Ed.2d 661. The Court noted that it had earlier described a general rule in *Montana v. United States,* 450 U.S. 544, 101

S.Ct. 1245, 1257–1258, 67 L.Ed.2d 493 (1981) that, absent different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on reservation land acquired in fee simple by non-Indian owners. *Strate,* 117 S.Ct. at 1409. *Montana* also recognized two exceptions to this general rule: The first exception relates to nonmembers who enter into consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare. *Strate,* 117 S.Ct. at 1409–1410, *citing Montana,* 101 S.Ct. at 1258. In *Strate* the Court held that tribal courts may not entertain claims against nonmembers arising out of accidents on state highways, absent a federal statute or treaty authorizing the tribe to govern the conduct of nonmembers on the highway in question. *Strate,* 117 S.Ct. at 1408–1409. Key to the Court's holding was a finding that the right-of-way at issue, for purposes of determining tribal court jurisdiction, would be treated the same as the alienated fee land in *Montana. Strate,* 117 S.Ct. at 1414. Defendants argue that the highway right-of-way involved in this case is identical to the ones in *Strate* and *Wilson* and command an identical result.

To escape the purview of *Montana, Strate,* and *Wilson,* defendants must establish that (1) the right-of-way involved in this case is not equivalent to alienated fee land, (2) a federal statute or treaty authorizes the Tribe to govern the conduct of the plaintiffs on the highway in question, or (3) one of the exceptions to the general rule identified in *Montana* applies.

### B. The Treaty of 1868

Defendant Arneson first argues that the Treaty of 1868 authorizes the Tribe to govern the plaintiffs' conduct on Interstate 90. Defendant Arneson relies on the following language of Article II of the treaty which established a reservation for the Crow Tribe and provided that it be

> [s]et apart for the absolute and undisturbed use and occupation of the Indians

---

1. The parties dispute whether Mr. Dust was standing in the westbound lane or on the right edge of the highway. However, this dispute is immaterial to resolution of the issues in this case because it is undisputed that Mr. Dust was standing within the highway right-of-way.

... and the United States now solemnly agrees that no persons, except those herein designated and authorized so to do ... shall ever be permitted to pass over, settle upon, or reside in the territory described in this article for the use of said Indians.

The treaty obligated the United States to prohibit persons not designated and authorized to do so from residing on or passing through reservation lands used and occupied by the Tribe. The Tribe argued that the treaty conferred upon the Tribe the authority to control fishing and hunting on those lands. *Montana*, 101 S.Ct. at 1255. The Supreme Court agreed, in part, but found that the authority to control could only extend to land on which the Tribe exercises "absolute and undisturbed use and occupation." *Id.* Consequently, even assuming the 1868 treaty gave the Tribe the power to regulate nonmember hunting and fishing on the reservation, the Court found that "the 1868 treaty provides no support for tribal authority to regulate hunting and fishing on land owned by non-Indians." *Montana*, 101 S.Ct. at 1256.

■ In *Strate* the tribal judge and the Three Affiliated Tribes of the Fort Berthold Indian Reservation argued that while *Montana* may instruct regarding regulatory authority, tribal courts retain adjudicatory authority in disputes over occurrences inside a reservation even when the episode in question involves nonmembers. In rejecting this argument Justice Ginsberg noted that, regarding activity on non-Indian fee land within a reservation, *Montana* delineated a broad main rule regarding the power the tribes retain to exercise forms of "civil jurisdiction" over non-Indians. *Strate*, 117 S.Ct. at 1413, citing *Montana*, 101 S.Ct. at 1258. Justice Ginsberg concluded that "[a]s to nonmembers ... a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction." *Strate*, 117 S.Ct. at 1413. Consequently, if the 1868 treaty provides no support for tribal authority to regulate or exercise legislative authority over nonmember conduct on alienated fee land within the reservation, as found in *Montana*, it likewise provides no support for the exercise of tribal adjudicatory authority over nonmember conduct on alienated fee land.

### C. Inherent Sovereignty

■ Defendant Arneson next argues that Congress has not diminished the inherent sovereignty that the Tribe reserved in its 1868 treaty. This particular argument is dispelled as noted above and by the following quote from *Montana*.

To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. [citations omitted] A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

*Montana*, 101 S.Ct. at 1258. While the Tribe retains inherent sovereignty to exercise some forms of civil jurisdiction over non-Indians on non-Indian fee land, it is specifically limited by *Montana* to (1) nonmembers who enter into consensual relationships with the tribe or its member and (2) activity that directly affects the tribe's political integrity, economic security, health, or welfare. As noted below, neither exception applies in this case.

### D. Alienated Fee Land

■ Defendant Arneson next claims that *Strate* and *Wilson* are distinguishable because there is no evidence in this case to show that the Interstate 90 right-of-way which crosses the Dust allotment was granted in fee simple. This particular argument is disingenuous. The land at issue in both *Strate* and *Wilson* was land held in trust for the tribes over which a right-of-way had been granted and determined by the courts to be "equivalent, for nonmember governance purposes, [footnote omitted] to alienated, non-Indian land." *Strate*, 117 S.Ct. at 1413; *see Wilson*, 127 F.3d at 813–814. Similarly, the

land at issue in this case is trust land over which a highway right-of-way has been granted.

### E. The Second Exception of Montana

Defendant Arneson next argues that the second exception identified in *Montana* applies to support the exercise of tribal court jurisdiction because "this case involves conduct on the part of a non-Indian motorist who struck and killed a member of the Tribe on his own land."[2] This particular argument was specifically addressed and rejected in *Wilson. See* 127 F.3d at 814–815. For the same reasons it is rejected here.

### F. Issues of Fact

■ Finally, Defendant Arneson asserts that genuine issues of material fact exist which preclude summary judgment. He first argues that there is no evidence that the Interstate 90 right-of-way was granted with the consent of the Crow Tribe within the meaning of *Strate* or that the Tribe intended to cede the jurisdiction it reserved in the 1868 treaty. The right-of-way at issue in this case was granted by the Bureau of Indian Affairs pursuant to 25 U.S.C. §§ 323–328. The Bureau of Indian Affairs approved the right-of-way "subject to any prior, valid, existing rights or adverse claims." Defendant Arneson argues that the right-of-way was granted by the BIA subject to any prior rights that the Tribe possessed to regulate the right-of-way under its 1868 treaty. As noted by the discussion in section (B) above, the Tribe possessed no such regulatory rights under the 1868 treaty. Consequently, the Tribe could not have reserved what it never possessed.

■ Defendant Arneson next asserts that the evidence is disputed as to the extent to which the Crow Tribe regulates conduct on Interstate 90 by way of the Tribal Employment Rights Ordinance, the Crow Tribe Law and Order Code and Traffic Code, and by Bureau of Indian Affairs and tribal police safety monitoring and patrols on Interstate 90. *Strate* states that tribal courts may not

entertain claims against nonmembers arising out of accidents on state highways, absent a federal statute or treaty expressly authorizing the tribe to govern the conduct of nonmembers on the highway in question. The tribal ordinance and code provisions identified by defendant Arneson are neither federal statute or treaty within the meaning of *Strate*. Moreover, *Strate* recognized that the authority of tribal police to patrol and stop and detain alleged offenders within a reservation on a federally granted highway right-of-way did not confer an unlimited authority to regulate the rights of the public to travel on such highway. *See Strate*, 117 S.Ct. at 1414, n. 11.

### CONCLUSION

Based upon the foregoing the Court finds that the right-of-way at issue, for tribal governance purposes, is equivalent to land alienated in fee to non-Indians. Accordingly, this case is governed by *Montana* and *Strate*. Because no federal statute or treaty authorizes the Tribe to govern the conduct of the plaintiffs on the highway right-of-way in question and because none of the exceptions to the general rule identified in *Montana* apply, this Court now determines that the Crow Tribal Court has no adjudicatory authority over Walter Schnobrich and Austin's Express, Inc., concerning the subject matter of the civil action filed by Linda Dust in Crow Tribal Court, *Estate of Dallas Dust v. Austin's Express and Walter J. Schnobrich,* civil case no. 96–436.

**IT IS HEREBY ORDERED** that plaintiffs' cross-motion for summary judgment (Doc. No. 12) is **GRANTED.** Defendant Arneson's cross-motion for summary judgment (Doc. No. 27) is **DENIED.**

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Crow Tribal Court has no adjudicatory authority over Walter Schnobrich and Austin's Express, Inc., concerning the subject matter of the civil action filed by Linda Dust in Crow Tribal Court, *Estate of Dallas Dust v. Aus-*

---

2. The assertion that Mr. Dust was struck and killed on his own land is not entirely correct. Mr. Dust was struck while standing on that por-

tion of the federally granted highway right-of-way which crosses allotted trust land.

*tin's Express and Walter J. Schnobrich,* civil case no. 96–436.

**IT IS FURTHER ORDERED** that the defendants are permanently enjoined from proceeding further against Walter Schnobrich and Austin's Express, Inc., in Crow Tribal Court regarding the subject matter of the *Estate of Dallas Dust v. Austin's Express and Walter J. Schnobrich,* civil case no. 96–436