2004 ND 21

**Gary WINER, Plaintiff and Appellant**

**v.**

**PENNY ENTERPRISES, INC., Jerrid Mudgett, Sr., individually and as the next friend and guardian of his minor son, Jerrid Mudgett, Jr., Defendants and Appellees.**

No. 20030114.

Supreme Court of North Dakota.

Jan. 28, 2004.

Rehearing denied Feb. 25, 2004.

Peter K. Halbach, Haugland, Halbach and Halbach, Devils Lake, N.D., for plaintiff and appellant.

Daniel M. Traynor, Traynor, Rutten & Traynor, P.C., Devils Lake, N.D., for defendants and appellees.

NEUMANN, Justice.

[¶ 1]  Gary Winer appealed from an order and judgment dismissing, without prejudice, his personal injury action against Jerrid Mudgett, Sr., and Jerrid Mudgett, Jr., for lack of subject-matter jurisdiction, and against Penny Enterprises, Inc., for nonjoinder of the Mudgetts as indispensable parties.  We conclude the district court correctly ruled it lacked subject-matter jurisdiction over this action brought by a non-Indian plaintiff against Indian defendants for damages resulting from a motor vehicle accident occurring on a state highway within the exterior boundaries of the Spirit Lake Indian Reservation.  We affirm.

I

[¶ 2]  Jerrid Mudgett, Sr., and his minor son Jerrid Mudgett, Jr., live in Benson County and are enrolled members of the Spirit Lake Tribe.  Jerrid Mudgett, Sr., is employed by Penny Enterprises, Inc., which is a domestic corporation organized under North Dakota law with its principal place of business at St. Michael, within the exterior boundaries of the Reservation. Gary Winer is not an Indian but lives in St. Michael.  On August 25, 2000, the Mudgetts and Winer were involved in a motor vehicle accident on North Dakota Highway 20 within the exterior boundaries of the Reservation.

[¶ 3]  In December 2000, Winer sued Jerrid Mudgett, Sr., individually and as guardian of his son, and Penny Enterpris-

es in state district court for his personal and bodily injuries received in the collision. Winer alleged Jerrid Mudgett, Sr., negligently entrusted the driving and operation of a semi truck tractor owned by Penny Enterprises to his 12-year-old son, Jerrid Mudgett, Jr., who stalled or stopped the tractor on the shoulder of the highway, where it was struck by Winer's vehicle. Winer also alleged Penny Enterprises was negligent in its training, supervision or control of its employees and was negligent in its care and maintenance of the semi truck tractor involved in the collision. Winer sought more than $50,000 in damages.

[¶ 4] The Mudgetts and Penny Enterprises moved to dismiss for lack of subject-matter jurisdiction because the Mudgetts are enrolled members of the Spirit Lake Tribe and the incident occurred within the exterior boundaries of the Reservation. The court granted the motion in May 2001 and dismissed without prejudice the action against the Mudgetts, but did not dismiss the action against Penny Enterprises.

[¶ 5] Penny Enterprises moved for summary judgment in December 2001, arguing Jerrid Mudgett, Sr., was an independent contractor and was not acting within the scope of employment. In July 2001, the court denied the motion, but concluded Mudgett was an independent contractor and Winer had no claim of vicarious liability against Penny Enterprises. The court limited Winer's recovery against Penny Enterprises to breach of duties arising from ownership of the semi truck tractor. In December 2002, Penny Enterprises moved to dismiss for nonjoinder of the Mudgetts as indispensable parties. Winer did not resist the motion to dismiss Penny Enterprises, and the district court dismissed the remainder of the action without prejudice in February 2003. Winer appealed.

## II

[¶ 6] Ordinarily, an order dismissing a complaint without prejudice is not appealable because either side may commence another action after the dismissal. *State v. Gwyther,* 1999 ND 15, ¶ 10, 589 N.W.2d 575. However, a dismissal without prejudice may be final and appealable if it has the practical effect of terminating the litigation in the plaintiff's chosen forum. *Rodenburg v. Fargo–Moorhead YMCA,* 2001 ND 139, ¶ 12, 632 N.W.2d 407; *Triple Quest, Inc. v. Cleveland Gear Co.,* 2001 ND 101, ¶ 8, 627 N.W.2d 379. In this case, the order and judgment effectively foreclose litigation of Winer's action in the courts of this state. Consequently, we conclude the dismissal is appealable.

## III

[¶ 7] Winer argues the district court erred in ruling it did not have subject-matter jurisdiction over his personal injury action against the Mudgetts. Winer does not argue the court erred in dismissing Penny Enterprises from the action, so we do not address that issue.

[¶ 8] There is no dispute about the jurisdictional facts relied upon by Winer in this case. When the jurisdictional facts are not in dispute, we review the district court's dismissal for lack of subject-matter jurisdiction de novo. *Allied Mut. Ins. Co. v. Dir. of N.D. Dep't of Transp.,* 1999 ND 2, ¶ 5 n. 1, 589 N.W.2d 201. The accident occurred within the exterior boundaries of the Reservation on Highway 20, which, at that location, runs on the section line of a township. The 66 foot section line right-of-way was expanded to 80 feet in 1930, and to 200 feet in 1955.

[¶ 9] Winer relied on the United States Supreme Court's decision in *Strate v. A–1 Contractors,* 520 U.S. 438, 117 S.Ct. 1404,

137 L.Ed.2d 661 (1997), where the Court held a tribal court in North Dakota did not have jurisdiction over an action brought by a non-Indian plaintiff against a non-Indian defendant seeking damages arising out of an auto accident on a state highway within the exterior boundaries of a reservation. Winer argued that, based on *Strate,* the accident actually occurred on state land, Highway 20, rather than on the Reservation, thus giving the state court subject-matter jurisdiction. The district court rejected this argument, concluding "a North Dakota state district court lacks subject-matter jurisdiction over an action brought by a non-Indian plaintiff against an individual Indian defendant for damages resulting from a collision on a state highway within the exterior boundaries of Indian country," and "[t]he land ownership analysis of the accident site as asserted by Plaintiff does not usurp the status of parties' (sic) analysis."

■ [¶ 10] Some basic Indian law background is helpful to understand the positions of the parties. "Within Indian country state jurisdiction is preempted both by federal protection of tribal self-government and by federal statutes on other subjects relating to Indians, tribes, their property, and federal programs." F. Cohen, *Handbook of Federal Indian Law* 349 (1982) (footnotes omitted). Civil cases where a non-Indian plaintiff seeks to sue an Indian are subject to this rule. *Id.* "A major step toward the transfer of federal jurisdictional responsibility over Indian affairs to the States was the passage of Public Law 280 [codified at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321–1326, 28 U.S.C. § 1360] in 1953," which "transferred criminal and civil jurisdiction over Indian lands from the federal to state governments in five states and allowed for future assumptions of jurisdiction by the remaining states." *Airvator, Inc. v. Turtle Moun-*

*tain Mfg. Co.,* 329 N.W.2d 596, 599 (N.D. 1983) (footnotes omitted). "In 1968 Congress passed Public Law 90–284 [codified at 25 U.S.C. § 1322] requiring Indian consent to subsequent transfers of jurisdiction." *Airvator,* 329 N.W.2d at 599 (footnote omitted). In 1963, the Legislature had enacted N.D.C.C. ch. 27–19, which permits state courts to take jurisdiction over all civil causes of action which arise on an Indian reservation upon the acceptance of jurisdiction by the Indian citizens. *Airvator,* 329 N.W.2d at 600. "As a result, this Court has consistently held that state courts have no jurisdiction over civil causes of action involving Indians, arising within the exterior boundaries of an Indian Reservation, unless a majority of the enrolled residents of the Reservation vote to accept jurisdiction." *Id.* The Spirit Lake Tribe has not consented to civil jurisdiction of state courts. *See* Devils Lake Sioux Law and Order Code § 2–2–102 ("Nothing in this Code shall be deemed to constitute acceptance or waiver of jurisdiction to the State of North Dakota over any matter criminal or civil, over which the Tribal Court has jurisdiction as previously enumerated.").

■ [¶ 11] Although the United States Supreme Court has held North Dakota's disclaimer of pre-existing jurisdiction for suits brought by Indian plaintiffs is preempted by federal law, the Court has said that state court assumption of jurisdiction in cases against Indian defendants arising in Indian country is impermissible. *See Three Affiliated Tribes v. Wold Eng'n, P.C.,* 476 U.S. 877, 880, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986) (*Three Tribes II* ); *Three Affiliated Tribes v. Wold Eng'n, P.C.,* 467 U.S. 138, 148, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984) (*Three Tribes I* ). In *Roe v. Doe,* 2002 ND 136, ¶ 8, 649 N.W.2d 566, we recently pointed out:

There are two categories of claims over which the United States Supreme Court has held tribal courts have exclusive civil jurisdiction under the infringement test. Included in the first category are those claims in which a non-Indian asserts a claim against an Indian for conduct occurring on that Indian's reservation. *See Williams [v. Lee,* 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959)]. In the second category, are those claims in which all the parties are members of the same Indian tribe and the claim involves conduct occurring on that tribe's reservation. *See Fisher v. District Court,* 424 U.S. 382, 387–89, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976) (per curiam).

Under the infringement test of *Williams v. Lee,* 358 U.S. at 223, 79 S.Ct. 269 state courts have no jurisdiction over claims if it "would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves."

[¶ 12] This Court relied upon *Williams v. Lee* in *Schantz v. White Lightning,* 231 N.W.2d 812 (N.D.1975), a case the district court found indistinguishable from the present case. In *Schantz,* two non-Indian plaintiffs sued in state court an Indian and the administratrix of a deceased Indian's estate for damages resulting from a motor vehicle accident occurring "on a state highway within the boundaries of the Standing Rock Indian Reservation." *Id.* at 813. When the defendants failed to answer, the plaintiffs notified the Attorney General of their intent to apply for payment of any judgment from the Unsatisfied Judgment Fund. The district court granted the At-

torney General's motion to dismiss for lack of jurisdiction, and this Court affirmed:

The *Williams* case involved an action by a non-Indian against a Navajo Indian for money on goods sold to the Indian on credit. The court ruled that such action would undermine the authority of the tribal courts over reservation affairs and infringe on the right of the Indians to govern themselves in accordance with the treaty between American Indian Tribes and the United States. We fail to understand how the *Williams* case can serve as a basis for this State to assume jurisdiction. If such supposition is correct it would follow that if an action to recover money for goods sold on credit would interfere and infringe on the right of the Indians to govern themselves, certainly an action to collect money for an injury sustained as a result of an accident would likewise infringe on the rights of the Indians to govern themselves.

In *Gourneau v. Smith,* 207 N.W.2d 256 (N.D.1973), this court had under consideration an almost identical situation, except the parties to the action were both enrolled Indians residing on the Indian reservation in which the accident occurred. This court pointed out that highways within an Indian reservation still constituted Indian country as defined by Federal law. See 18 U.S.C.A. Section 1151. We held that the state courts did not have jurisdiction. We have no reason to conclude otherwise in the instant case.

*Id.* at 814–15 (footnote omitted).[1] *See also Nelson v. Dubois,* 232 N.W.2d 54, 56 (N.D. 1975) (holding state court had no jurisdiction to entertain personal injury action by

---

1. "Indian country" is defined in 18 U.S.C. § 1151(a) as including "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation."

non-Indian plaintiffs against Indian defendant arising out of motor vehicle accident on state highway within the exterior boundaries of reservation).

[¶ 13] Winer essentially argues that the Supreme Court's decision in *Strate* has changed the law and supports state court jurisdiction under the circumstances. In *Strate*, 520 U.S. at 442, 117 S.Ct. 1404 the Supreme Court held "tribal courts may not entertain claims against nonmembers arising out of accidents on state highways, absent a statute or treaty authorizing the tribe to govern the conduct of nonmembers on the highway in question." *Strate* involved a traffic accident between two non-Indians on a portion of a North Dakota state highway running through the Fort Berthold Indian Reservation, which the State maintained under a right-of-way granted by the United States. The highway was located on land held by the United States in trust for the Three Affiliated Tribes. After the tribal court ruled it had authority to adjudicate the lawsuit, the defendants sought a declaratory judgment and an injunction against further proceedings in tribal court. The Eighth Circuit Court of Appeals ruled the tribal court lacked subject-matter jurisdiction over the dispute, and the Supreme Court affirmed in a unanimous opinion.

[¶ 14] In ruling the tribal court had no jurisdiction, the Supreme Court applied the test set forth in *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), "the pathmarking case concerning tribal civil authority over nonmembers." *Strate*, 520 U.S. at 445, 117 S.Ct. 1404. *Montana* holds "that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare." *Id.* at 446, 117 S.Ct. 1404. The Court rejected the argument that *Montana* did not govern because the land underlying the scene of the accident was held in trust for the tribe and its members, concluding the "right-of-way North Dakota acquired for the State's highway renders the 6.59–mile stretch equivalent, for nonmember governance purposes, to alienated, non-Indian land." *Strate*, 520 U.S. at 454, 117 S.Ct. 1404 (footnote omitted).

> Forming part of the State's highway, the right-of-way is open to the public, and traffic on it is subject to the State's control. The Tribes have consented to, and received payment for, the State's use of the 6.59 mile stretch for a public highway. They have retained no gatekeeping right. So long as the stretch is maintained as part of the State's highway, the Tribes cannot assert a landowner's right to occupy and exclude.... We therefore align the right-of-way, for the purpose at hand, with land alienated to non-Indians. Our decision in *Montana*, accordingly, governs this case.

*Id.* at 455–56, 117 S.Ct. 1404 (footnote omitted). The Court concluded that a car accident on a public highway does not meet either of *Montana's* two exceptions, and concluded the tribal court had no jurisdiction.

[¶ 15] We are not convinced that *Strate* heralds a new analysis for determining whether a state court has jurisdiction over an action brought against an Indian arising from conduct occurring within the exterior boundaries of an Indian reservation. In W. Canby, Jr., *American Indian Law in a Nutshell*, 175–76 (3rd ed.1998), the author offered the following observations about the Supreme Court's decision in *Strate*:

*Strate* involved only nonmembers on both sides, but it phrased the question for decision as whether a tribal court could "entertain a civil action against" nonmembers when the claim arose on a state right-of-way. *Strate,* 117 S.Ct. at 1407, 117 S.Ct. 1404. It also described tribal interests very narrowly. Consequently, one court of appeals has held that a tribal court could not entertain an action by a *tribal member* against a nonmember when the claim arose on a state highway within the reservation. *Wilson v. Marchington,* 127 F.3d 805 (9th Cir.1997), cert. denied, 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998). The state accordingly had jurisdiction. If the tribal member were the defendant, however, Williams v. Lee would require the action to be brought in tribal court. It is not yet clear whether *Strate* forecasts erosion of that rule for non-fee lands and state rights-of-way.

[¶ 16] We believe *Strate* does not govern this case for several reasons. Foremost, *Strate* analyzed a tribal court's jurisdiction, rather than a state court's jurisdiction, involving an action between non-Indians. When stating the highway right-of-way was equivalent to alienated, non-Indian land, the Court was careful to limit its description as applicable only for "nonmember governance purposes." *Strate,* 520 U.S. at 454, 117 S.Ct. 1404. *See also Strate,* at 456, 117 S.Ct. 1404 (stating "[w]e therefore align the right-of-way, *for the purpose at hand,* with land alienated to non-Indians") (emphasis added). Tribal court jurisdiction is dependent upon application of the *Montana* test, which governs an "Indian tribes' regulatory authority over nonmembers." *Nevada v. Hicks,* 533 U.S. 353, 358, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001). Since *Strate* was decided, the Supreme Court has even

noted that the "ownership status of land, in other words, is only one factor to consider in determining whether [tribal] regulation of the activities of nonmembers is 'necessary to protect tribal self-government or to control internal relations.'" *Hicks,* at 360, 121 S.Ct. 2304. *Williams v. Lee* is "[t]he seminal United States Supreme Court decision concerning state civil-adjudicatory authority in Indian country," Conference of Western Attorneys General, American Indian Law Deskbook, 154 (2nd ed.1998), and state court jurisdiction was not an issue in *Strate.* The interests implicated when a non-Indian is sued are "very different from those present" when a non-Indian sues an Indian in state court over an incident occurring in Indian country. *Three Affiliated Tribes I,* 467 U.S. at 148, 104 S.Ct. 2267. The United States Supreme Court has "formulated a comprehensive pre-emption inquiry in the Indian law context which examines not only the congressional plan, but also 'the nature of the state, federal, and tribal interests at state, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.'" *Three Affiliated Tribes II,* 476 U.S. at 884, 106 S.Ct. 2305 (quoting *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 145, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980)).

[¶ 17] Moreover, all of the cases relied upon by Winer which have applied the *Strate* analysis have involved situations testing tribal court jurisdiction over non-Indian defendants where the conduct occurred on a right-of-way. *See Burlington N.R.R. Co. v. Red Wolf,* 196 F.3d 1059, 1062 (9th Cir.1999); *Wilson v. Marchington,* 127 F.3d 805, 807 (9th Cir.1997); *Chiwewe v. Burlington N. & Santa Fe Ry. Co.,* 239 F.Supp.2d 1213, 1215 (D.Ct.N.M.

2002); *Austin's Express, Inc. v. Arneson,* 996 F.Supp. 1269, 1271 (D.Mont.1998). We have not found any case wherein the *Strate* analysis has been used to determine whether a state court has jurisdiction over a tort action brought against an Indian arising on a right-of-way within the exterior boundaries of a reservation. Rather, courts have refused to apply *Strate* beyond the context in which it was decided. *See Williams v. Board of County Comm'rs,* 125 N.M. 445, 963 P.2d 522, 526 (Ct.App. 1998) (summarily rejecting plaintiff's argument that *Strate* "dictates that a state court must consider the merits of his claims" because "*Strate* addressed tribal court jurisdiction" and "was independent of case law holding that Indian nations may not be sued in state courts").

[¶ 18] If *Strate* signals a drastic departure from the state court jurisdictional principles enunciated in *Williams v. Lee* and its progeny, it is well hidden in the *Strate* decision. *Strate* is distinguishable from the situation in this case, and until the United States Supreme Court declares otherwise, we conclude *Strate* does not govern our analysis here.

[¶ 19] Winer also argues state jurisdiction over claims arising on Highway 20 within the Reservation exists because "Highway 20 runs on the section lines granted as public highways prior to there even being a reservation." Winer relies on *Faxon v. Lallie Civil Township,* 36 N.D. 634, 163 N.W. 531 (1917), for this proposition. *Faxon* involved an appeal from a judgment affirming a township board of supervisors' decision to establish public highways on reservation land now known as the Spirit Lake Indian Reservation. The appellant unsuccessfully argued he was entitled to be compensated for the strip of land used for the highway. The township claimed "an easement or right to use the road" under the Public Highway Act of 1866, which granted the "right of way for the construction of highways over public lands." *Id.* at 635, 163 N.W. at 532. The territorial legislature in 1871 accepted the grant and declared "all section lines in this territory" to be "public highways." *Id.* The issue was whether the subsequent setting apart of the land as an Indian reservation in 1874 "reserved the land for a public use, and repealed the prior grant." *Id.* at 636, 163 N.W. at 532. After noting that under an 1874 treaty with the Sisseton and Wahpeton Band of Sioux Indians, the Indians were paid "$80,000 for a relinquishment of all of their claims in the basin of the Red river and Devils Lake, and were granted the right to the use of the reservation," the Court stated:

It is clear that when the reservation was accepted by the Indians, the Highway Act had been in effect over eight years and had been accepted for three years. It is also clear that the right granted to the state was not in the nature of a license, revocable at the pleasure of the grantor, but that highways once established over the public domain under and by virtue of the act became vested in the public, who had an absolute right to the use thereof which could not be revoked by the general government, and that whoever thereafter took the title from the general government took it burdened with the highways so established. *Township v. Skauge,* 6 N.D. 382, 71 N.W. 544.

*Id.* at 637, 163 N.W. at 533. The court concluded the State's right to construct section line roads vested prior to the setting aside of the land as an Indian reservation.

[¶ 20] *Faxon* does not help Winer in this case. Contrary to Winer's suggestion, the State did not receive fee simple title to the section line roads at issue. The Court specifically referred to the grant as an

"easement," *Faxon,* 36 N.D. at 640, 163 N.W. at 534, and this has been the description used by courts in later references to it. *See, e.g., Bird Bear v. McLean County,* 513 F.2d 190 (8th Cir.1975); *King v. Stark County,* 67 N.D. 260, 264, 271 N.W. 771, 773 (1937). In *Small v. Burleigh County,* 225 N.W.2d 295, 297 (N.D.1974), this Court said, "[i]n North Dakota the rights of the public to section line highways and to streets are easements only, limited to the right to travel and other rights incident thereto, and the owner of the adjoining land owns the fee title to the property included in the 33 foot easement up to the section line." North Dakota does not have a fee simple ownership interest in Highway 20.

[¶ 21] Moreover, as the Supreme Court explained in *Three Tribes I,* 467 U.S. at 142–43, 104 S.Ct. 2267 (footnote omitted):

Long before North Dakota became a State, this Court had recognized the general principle that Indian territories were beyond the legislative and judicial jurisdiction of state governments. *Worcester v. Georgia,* 6 Pet. 515, 8 L.Ed. 483 (1832); see generally *Williams v. Lee,* 358 U.S., at 218–222, 79 S.Ct., at 269, 271. That principle was reflected in the federal statute that granted statehood to North Dakota. Like many other States in the Midwest and West, North Dakota was required to "disclaim all right and title . . . to all lands lying within [the State] owned or held by any Indian or Indian tribes" as a condition for admission to the Union. Enabling Act of Feb. 22, 1889, § 4, cl. 2, 25 Stat. 677. The Act further provided that all such Indian land shall "remain subject to the disposition of the United States, and . . . shall remain under the absolute jurisdiction and control of the Congress of the United States." *Ibid.* North Da-

kota's original Constitution contained, in identical terms, the required jurisdictional disclaimers. See N.D. Const., Art. XVI, § 203, cl. 2 (1889).

North Dakota has disclaimed jurisdiction over Indian reservation lands.

[¶ 22] We conclude, as did the district court, that *Schantz* remains valid law. The exercise of state court jurisdiction over Winer's personal injury action against the Mudgetts would infringe on the rights of the Spirit Lake Tribe to govern themselves. The district court did not err in concluding it lacked subject-matter jurisdiction over the action against the Mudgetts.

## IV

[¶ 23] The order and judgment are affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 25] If we were visiting the issue for the first time I would probably agree with Justice Maring's analysis and conclusions. However, we are not visiting the issue for the first time. On identical facts in *Nelson v. Dubois,* 232 N.W.2d 54 (N.D.1975) and *Schantz v. White Lightning,* 231 N.W.2d 812 (N.D.1975), the Court reached a contrary conclusion. The Court did not have the benefit of *Strate v. A–1 Contractors,* 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) in reaching those decisions. However, neither is *Strate* on point factually since both parties in the lawsuit were non-Indian. If we were writing on a clean slate, Justice Maring's analysis appears to be a logical interpretation of the law. However, I am not inclined to so quickly abandon a nearly 30 year precedent of this

Court based on a case that is factually dissimilar, particularly when the dissimilar facts concern the tribal membership of the parties.

[¶ 26] Having served on this Court during the saga of *Three Affiliated Tribes v. Wold Eng'n, P.C.,* 467 U.S. 138, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984) and *Three Affiliated Tribes v. Wold Eng'n, P.C.,* 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986), it is plain to me that in matters involving jurisdiction on Indian reservations, we often are unable to know what the law is until the United States Supreme Court tells us what it is. I am unwilling to abandon our precedent unless the United States Supreme Court in a factually similar case, tells us our precedent is wrong.

[¶ 27] Gerald W. Vande Walle, C.J.

MARING, Justice, dissenting.

[¶ 28] I respectfully dissent. Under the infringement test of *Williams v. Lee,* state court jurisdiction is not allowed over certain claims if it "would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). The majority opinion concludes state court jurisdiction violates the *Williams* infringement test when asserted in an action brought by a nonmember against an Indian because of an automobile accident which occurred on a portion of a state highway running through a reservation. I disagree.

[¶ 29] "There are two categories of claims over which the United States Supreme Court has held tribal courts have exclusive civil jurisdiction under the infringement test. Included in the first category are those claims in which a non-Indian asserts a claim against an Indian for conduct occurring on that Indian's res-

ervation. In the second category are those claims in which all the parties are members of the same Indian tribe and the claim involves conduct occurring on that tribe's reservation." *Roe v. Doe,* 2002 ND 136, ¶ 8, 649 N.W.2d 566 (citations omitted). The operative phrase in the first category is "occurring on that Indian's reservation." *Id.* at ¶ 22 (quoting *Hornell Brewing Co. v. The Rosebud Sioux Tribal Court,* 133 F.3d 1087, 1091 (8th Cir.1998)).

[¶ 30] In *Strate v. A–1 Contractors,* the United States Supreme Court held that a tribe's adjudicatory jurisdiction over nonmembers does not exceed its legislative jurisdiction over nonmembers. 520 U.S. 438, 453, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). In *A Primer on Tribal Court Practice,* B.J. Jones discussing tribal court civil jurisdiction states:

The distinction between the subject matter jurisdiction of a tribal court over a particular type of dispute and the personal jurisdiction over a particular person or entity has often been a murky one. This has been clarified somewhat by the recent United States Supreme Court Decision in *A–1 Contractors v. Strate,* wherein the Supreme Court postulated that Indian tribal courts can only exercise subject matter jurisdiction over disputes involving subject matter which the tribe can regulate under federal law. Therefore, when the tribal court exercises civil jurisdiction over non-Indians, that exercise of jurisdiction must comport with the United States Supreme Court's pronouncements regarding the authority of a Tribe to regulate the conduct of a non-Indian within Indian country, especially *Montana v. United States.* Apparently, if the Tribe cannot regulate the activity, the tribal court cannot adjudicate a case questioning the activity.

B.J. Jones, *A Primer on Tribal Court Civil Practice* at http://www.court.state.nd.us/court/resource/tribal.htm (footnotes omitted).

[¶ 31] *Strate* concerned the adjudicatory authority of tribal courts over personal injury actions against defendants who are not tribal members when the accident occurs on a portion of public highway maintained by the state under a federally granted right-of-way over Indian reservation land. 520 U.S. at 442, 117 S.Ct. 1404. The United States Supreme Court held such cases fall within state or federal regulatory and adjudicatory governance and "tribal courts may not entertain claims against nonmembers arising out of accidents on state highways...." *Id.* The Court noted that it expressed no view on the governing law or proper forum when an accident occurs on a tribal road within a reservation. *Id.* I am of the opinion that such language suggests that if the automobile accident involved a nonmember on a tribal road within the reservation, the tribal court may have jurisdiction over the subject matter because of its right to regulate those roads. I am, therefore, of the opinion that the location of the accident is important to whether the tribal court has civil jurisdiction. The United States Supreme Court held in *Strate* that its decision in *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), was the "pathmarking case" concerning tribal regulatory and adjudicatory authority over nonmembers. *Strate,* at 445, 117 S.Ct. 1404. "*Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on *non-Indian land within a reservation,* subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political

integrity, economic security, health, or welfare." *Strate,* at 446, 117 S.Ct. 1404 (emphasis added). With regard to the second exception, the United States Supreme Court observed that "state courts may not exercise jurisdiction over disputes arising out of on-reservation conduct—even over matters involving non-Indians-if doing so would 'infringe on the right of reservation Indians to make their own laws and be ruled by them.'" *Id.* at 452–53, 117 S.Ct. 1404 (quoting *Fisher v. District Court of Sixteenth Judicial Dist. of Mont.,* 424 U.S. 382, 386, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976) (citation omitted)). The United States Supreme Court held in *Strate* that "[t]he right-of-way North Dakota acquired for the State's highway renders the 6.59 mile stretch equivalent, for nonmember governance purposes to alienated, non-Indian land." *Id.* at 454, 117 S.Ct. 1404 (footnote omitted). The Court further held that, as part of the State's highway, "the right-of-way is open to the public, and traffic on it is subject to the State's control." *Id.* at 455, 117 S.Ct. 1404. The tribe's loss of exclusive use and occupation implies a loss of regulatory jurisdiction over the use of land by others, and thus, the United States Supreme Court's decision in *Montana* controls. *Id.* at 456, 101 S.Ct. 1245. The general rule set out in *Montana* precludes tribal court civil jurisdiction, requiring an examination of whether either of the two exceptions apply. The United States Supreme Court explains why the first and second exceptions in *Montana* do not apply. *Id.* at 457–58, 117 S.Ct. 1404. With regard to the first exception, the United States Supreme Court concludes the "Fredericks Stockert highway accident presents no 'consensual relationship' of the qualifying kind." *Id.* at 457, 117 S.Ct. 1404. With regard to the second exception, the Court concludes: "Neither regulatory nor adjudicatory au-

thority over the state highway accident at issue is needed to preserve 'the right of reservation Indians to make their own laws and be ruled by them.' The *Montana* rule, therefore, and not its exceptions, applies to this case." *Id.* at 459, 117 S.Ct. 1404 (citation omitted).

[¶ 32] The majority opinion in this case cites *Nelson v. Dubois,* 232 N.W.2d 54 (N.D.1975), and *Schantz v. White Lightning,* 231 N.W.2d 812 (N.D.1975), to support its position that the exercise of jurisdiction by the state court infringes on tribal rights to make their own laws and be ruled by them, but these cases were decided by our Court before *Montana* and *Strate* were decided by the United States Supreme Court. It is now clear that the second *Montana* exception's proper application is: "Indian tribes retain their inherent power [to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members. . . . But [a tribe's inherent power does not reach] beyond what is necessary to protect tribal self-government to control internal relations." *Strate,* 520 U.S. at 459, 117 S.Ct. 1404 (quoting *Montana,* 450 U.S. at 564, 101 S.Ct. 1245).

[¶ 33] In *Nevada v. Hicks,* 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001), the United States Supreme Court held that a tribal court did not have civil jurisdiction to adjudicate state officers' alleged tortious conduct in executing a search warrant on reservation land for an off-reservation crime. In responding to Justice Stevens' opinion concurring in the judgment, the United States Supreme Court noted that Justice Stevens thinks *Strate* " 'merely concerned the circumstances under which tribal courts can exert jurisdiction over claims against nonmembers.' But *Strate's* limitation on jurisdiction over nonmembers pertains to subject-matter, rather than merely personal, jurisdiction, since it turns upon whether the actions at issue in the litigation are regulable by the tribe." *Id.* at 368 n. 8, 121 S.Ct. 2304 (citation omitted).

[¶ 34] I am of the opinion that Winer can pursue his case in state court, "open to all who sustain injuries on North Dakota's highway[s]." *Strate,* 520 U.S. at 459, 117 S.Ct. 1404.

[¶ 35] I would reverse and remand for further proceedings.

[¶ 36] CAROL RONNING KAPSNER, J., concurs.